IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERN WRIGHT, JUNE WRIGHT, and SUPERANTENNA CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL BLOOM, JAIMEE BLOOM, KINGSBRIDGE CORPORATION, OFFSHORE SOLUTIONS, INC., SINOTECH CORPORATION, DIFONA COMMUNICATION GMBH, BULLIVANT HOUSER BAILEY PC, and DOES 1–10,<br><br>Defendants. | No. C 12-00746 WHA<br><br>**ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, GRANTING MOTION TO DISMISS FOR LACK OF PROPER SERVICE, AND VACATING HEARING** |

**INTRODUCTION**

A German company moved to dismiss for lack for personal jurisdiction and failure to effectuate proper service via the Hague Convention. The motion to dismiss for lack for personal jurisdiction is **DENIED**. The motion to dismiss for lack of proper service is **GRANTED**.

**STATEMENT**

The background facts of this action have been set forth in the order regarding the motion to dismiss or transfer (Dkt. No. 77). Additional facts relevant to defendant Difona Communications GmbH's motion to dismiss for lack of personal jurisdiction and failure to effectuate proper service via the Hague Convention are set forth below.

Plaintiffs Vern and June Wright started Super Antennas in 1999, a small business in Lincoln, California, selling antennas to the amateur ham radio market. The Wrights later established SuperAntenna Corporation, a California corporation headquartered in San Mateo.

SuperAntenna Corporation is entirely owned by the Wrights. This order refers to plaintiffs' companies generally as "Super Antenna."

Defendant Difona is a ham radio equipment distributor located in Germany. Difona had an ongoing business relationship with plaintiffs over several years for the purchase and distribution of Super Antenna products in Germany (Second Amd. Compl. ¶¶ 208–209). Difona was the exclusive distributor for Super Antenna products in Germany during 2009 and 2010 (*id.* ¶ 203). Plaintiffs also allege that they had an agreement with Difona "to become a worldwide dealer and distributor for Super Antenna" (*id.* ¶ 206). In support of these allegations, plaintiffs submitted invoices, emails, and shipping statements relating to the purchase and shipment of Super Antenna products from California to Difona (Wright Decl., Exhs. 1-3).

As part of a fraudulent scheme with defendants Michael and Jaimee Bloom, Difona sold pirated Super Antenna products in Europe by directly contacting Super Antenna's customers and through retail sales from Difona's website. Difona owner Alfred Kräemer approached Super Antenna dealers in Europe, falsely stating that Super Antenna was out of business and offering to sell "genuine Super Antenna products manufactured by the same factory to the same specifications" (Second Amd. Compl. ¶ 212).

Plaintiffs filed a first amended complaint on May 16, 2012. Difona moved to dismiss the complaint. On October 4, plaintiffs filed a second amended complaint. The second amended complaint includes claims against Difona for (1) intentional or negligent misrepresentation or fraud, and unjust enrichment and (2) misappropriation of trade secrets. Because the second amended complaint contained additional allegations against Difona, an order issued requiring Difona to file a new motion to dismiss (Dkt. No. 78). Difona now moves to dismiss the second amended complaint based on lack of personal jurisdiction and defective service of process. For the reasons discussed below, Difona's motion to dismiss for lack of personal jurisdiction is **DENIED**. Difona's motion to dismiss for lack of service is **GRANTED**.

**ANALYSIS**

California's long-arm jurisdiction statute is coextensive with federal due process requirements, such that the jurisdiction analyses under state law and federal due process are the

1    same. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (citing Cal. Code
2    Civ. Proc. Section 410.10). Where a defendant moves to dismiss a complaint for lack of
3    personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is
4    appropriate. *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). "If the motion
5    is based on written materials rather than an evidentiary hearing, the plaintiff need only make a
6    prima facie showing of jurisdictional facts." *Ibid.* The plaintiff cannot "simply rest on the bare
7    allegations of its complaint," but uncontroverted allegations in the complaint must be taken as
8    true. *Ibid*.

   **1.   GENERAL JURISDICTION.**

10   To exercise general jurisdiction over Difona, its contacts with California must be
11   "substantial" or "continuous and systematic" such that Difona can be haled into court in
12   California in any action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408,
13   415 (1984). Difona's contacts with the forum state must be of the sort that approximate physical
14   presence. *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984).

15   According to the declaration of Alfred Kräemer, managing director of Difona, the
16   company is headquartered in Germany. Difona is owned and operated by Kräemer and his
17   family. Difona has no offices or employees in California, is not authorized to do business here,
18   does not pay California taxes, and has no registered agent for service of process in California
19   (Kräemer Decl. ¶¶ 3, 5). Kräemer further testified that Difona sells ham-radio equipment
20   exclusively in Europe and does not sell or offer for sale any products in California (*id.* ¶ 5).

21   Plaintiffs contend that general jurisdiction exists because Difona purchased products
22   from California, sells products in California, and "downloaded specifications from the website of
23   a California business." The Supreme Court has made clear, however, that "mere purchases, even
24   if occurring at regular intervals, are not enough to warrant a State's assertion of in personam
25   jurisdiction over a nonresident corporation in a cause of action not related to those purchase
26   transactions." *Helicopteros*, 466 U.S. at 418. Moreover, plaintiffs' allegation that Difona sells
27   products in California is contradicted by their own affidavits. Plaintiffs point to the declaration
28   of William Waters III, an individual who attempted to purchase an allegedly pirated product

3

1 from Difona's website. Mr. Waters testified that, upon his attempt to purchase a product for
2 delivery to California, Difona contacted him to tell him the company was "not allowed to sell to
3 USA by law" (Waters Decl. ¶ 11). Difona contacted him a second time, referring to Vern
4 Wright's lawsuit against Difona and stating that "we can not ship to California until this matter is
5 cleared" (*id.* ¶ 13). Difona refunded the payment and did not ship any product to Mr. Waters.
6 Plaintiffs set forth no other evidence that Difona sold any products in California. Lastly,
7 plaintiffs' claim that Difona downloaded materials from plaintiffs' website is insufficient to
8 establish general jurisdiction over Difona in California. *See Mavrix Photo, Inc. v. Brand*
9 *Technologies, Inc.*, 647 F.3d 1218, 1226–27 (9th Cir. 2011).

### 2. SPECIFIC JURISDICTION.

Even where general jurisdiction does not exist, personal jurisdiction may be established based on "specific jurisdiction" when the following requirements are met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Dole Food*, 303 F.3d at 1111 (internal quotation marks and citation omitted).

Plaintiffs' claims against Difona are based on Difona's sale of pirated Super Antenna products in Europe, which competed with or displaced potential sales of plaintiffs' products. Plaintiffs also claim that, in order to steal plaintiffs' customers, Kräemer made false or misleading statements to European dealers of Super Antenna products that resulted in competitive injury. "[A] major antenna dealer who previously sold Super Antenna products" spoke with Kräemer via telephone in March 2012. Kräemer told the dealer, Martin Lynch, that Super Antenna was "dead" and out of business, and that plaintiff Wright would no longer be able

to supply antennas again.* Difona "could now supply all of the Super Antenna products which were made in *exactly* the same factory that supplied [plaintiff's] products and that the antenna products Difona were [*sic*] offering were identical" to those offered by plaintiffs (Second Amd. Compl. ¶ 221). Plaintiffs further allege that they "have identified numerous other former SuperAntenna dealers who were approached by Difiona and sold pirated versions of SuperAntenna products" (*id.* ¶ 222). Difona's fraudulent actions allegedly resulted in injury to plaintiffs' business relationships and damaged the world-wide market for Super Antenna products.

### A.     Purposeful Availment and Direction.

This prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (*en banc*). In tort cases, a court should determine whether a defendant "purposefully directs his activities" at the forum state, by applying an "effects" test, set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984). Our court of appeals has construed the *Calder* effects test to require that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc.*, 433 F.3d at 1206.

The parties do not dispute that defendant's actions were intentional within the meaning of the *Calder* effects test. Difona contends, however, that because it never marketed or attempted to sell antennas in California, it is not subject to personal jurisdiction here. Difona argues that this case is similar to *Schwarzenegger v. Fred Martin Motor Co.*, 734 F.3d 797 (9th Cir. 2004). There, the defendant was an Ohio resident who used Arnold Schwarzenegger's image on an advertisement for his Ohio car delearship. Our court of appeals found that there was no "express aiming" at California, where Schwarzenegger resided, because the advertisement was directed to Ohioans, was never circulated in California, and because the defendant "had no reason to believe

---

* Plaintiffs submitted the declaration of Martin Lynch, managing director and owner of Martin Lynch & Sons, Ltd. Martin Lynch & Sons was previously a defendant in this action but settled with plaintiffs in September 2012 (Lynch Decl. ¶ 2).

5

that any Californians would see it and pay a visit to the dealership." *Id.* at 807. The court of appeals found that defendant's "express aim was local," even if the defendant may have known that Schwarzenegger lived in California, where the alleged harm was eventually felt. In this case, Difona argues that its actions were similarly focused locally (on Europe) and that it never exploited the California market. Difona contends that it is thus not subject to personal jurisdiction in this forum. This order disagrees.

Our court of appeals has held that "wrongful conduct individually targeting a known forum resident" constitutes "express aiming" under the *Calder* effects test. *See Bancroft & Masters, Inc. v. Augusta Nat., Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). The "express aiming" inquiry focuses on whether "an intended impact that is either local or undifferentiated" or is "targeted at a known individual who has a substantial, ongoing connection to the forum." *Fiore v. Walden*, 688 F.3d 558, 578 (9th Cir. 2012). In *Bancroft*, the defendant sent a letter to a third party in Virginia, which forced the plaintiff, a California resident, to bring suit in California to protect its intellectual property. The court of appeals determined that defendant's intentional action in sending the letter, even though to Virginia, individually targeted the plaintiff, a California corporation. Therefore, the defendant's act was "expressly aimed" at California. Moreover, the effects of the letter were primarily felt in California, as the defendant knew they would be. *Bancroft*, 223 F.3d at 1088.

Here, plaintiffs allege that Difona made knowingly false statements to Super Antenna customers to induce them to stop buying products from plaintiffs and to instead buy them from Difona. Plaintiffs further allege that Difona's fraud was directed at harming plaintiffs' California business by stealing plaintiffs' European customers. Difona purposefully targeted plaintiffs and their business by soliciting plaintiffs' customers, representing that Difona's products were the same, and informing customers that plaintiffs were out of business. Difona knew that the effects of its intentional conduct would be felt in California, plaintiffs' state of residence. Unlike the defendant in *Schwarzenegger*, whose intentional acts were focused only on Ohio, here plaintiffs have adequately alleged that Difona's fraudulent activities were

6

expressly aimed at competing with plaintiffs through direct interference with plaintiffs' customer relationships. This is based on the record at present and is subject to proof at trial.

Turning to the third prong of the *Calder* effects test, this order finds that plaintiffs have suffered "jurisdictionally sufficient" harm as a result of Difona's intentional acts. "In determining the situs of a corporation's injury, our precedents recognize that in appropriate circumstances a corporation can suffer economic harm both where the bad acts occurred and where the corporation has its principal place of business." *Mavrix Photo*, 647 F.3d at 1231-32 (citing *Dole Food*, 303 F.3d at 1113). Plaintiffs Vern and Judy Wright are residents of California, and the principal place of business of plaintiff Super Antenna is California. Where, as here, "a forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendant[] expressly aim[ed] [its] acts, the 'effects' test permits that forum to exercise personal jurisdiction." *Dole Food*, 303 F.3d at 1114.

### B. Whether the claim arises out of or relates to the defendant's forum-related activities.

"The second requirement for specific jurisdiction is that the contacts constituting purposeful availment must be the ones that give rise to the current suit." *Bancroft*, 223 F.3d at 1088. Our court of appeals applies a "but for" causation standard. *Ibid.* This requirement is met here. Plaintiffs allege that they would not have suffered an injury "but for" Difona's false statements to Super Antenna customers and sale of pirated Super Antenna products. These allegations form the basis for plaintiffs' claims against Difona in the current action.

### C. Whether the exercise of jurisdiction is reasonable.

"Once purposeful availment has been established, the forum's exercise of jurisdiction is presumptively reasonable. To rebut that presumption, a defendant 'must present a compelling case' that the exercise of jurisdiction would, in fact, be unreasonable." *Roth v. Garcia Marquez*, 942 F.2d 617, 625 (9th Cir. 1991). Our court of appeals has established a seven-factor test to determine whether the exercise of jurisdiction would be reasonable:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the

7

> most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007).

*First,* Difona argues there was no purposeful interjection into California because defendant did not and does not market or sell products in California and does not have employees or offices here. Plaintiffs, however, allege that Difona had a long-term business relationship with plaintiffs and their company for the purchase and distribution of Super Antenna products. Through this relationship, Difona gained access to and became aware of plaintiffs' alleged trade secrets, marketing information, and specifications of products that Difona later misappropriated. Plaintiffs claim that they had frequent telephone conversations and meetings with Difona to discuss joint marketing strategy, and that Difona regularly purchased products from Super Antenna in California over the course of several years. Difona purposefully interjected itself into California through its ongoing business relationship with plaintiffs in California, from which it received economic benefit. This factor weighs in favor of plaintiffs.

*Second*, Difona argues that it would be extremely burdensome to require it to defend itself in a California lawsuit. Difona is a German company, headquartered in Germany, with employees who are all German citizens and speak German as their primary language (Kräemer Decl. ¶¶ 3–4). Plaintiffs counter that Difona managing director Alfred Kräemer speaks English and travels frequently to the United States. Although this factor weighs against the exercise of jurisdiction, "[u]nless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction." *Roth*, 942 F.2d at 623.

*Third*, Difona contends that the factor regarding "conflict with the sovereignty of the defendants' state" weighs against the reasonableness of exercising jurisdiction. Difona argues that Germany has a significant interest in regulating the conduct of businesses that are headquartered in and do business within its borders. Difona does not have an agent or offices in the United States, is headquartered in Germany, and its employees are all German citizens. This factor also tends to undermine the reasonableness of asserting jurisdiction over Difona. In this

8

regard, we must always remember that foreign courts will be entitled to hale in our citizens and corporations to the same extent as we do theirs, so that this justification works both ways. Nonetheless, "[t]he factor of conflict with the sovereignty of the defendant's state is not dispositive because, if given controlling weight, it would always prevent suit against a foreign national in a United States court." *Id.* at 623-24.

*Fourth*, California has a strong interest in adjudicating the dispute. Plaintiffs' claims against Difona are based on California law. Additionally, California has a strong interest in providing redress for its citizens who suffered injury due to fraudulent conduct or misappropriation.

*Fifth*, a court must evaluate whether the United States is the most efficient forum to resolve this dispute. Difona argues that a more efficient forum is China, where the products were manufactured; England, where some of the products were sold by Difona; or Germany, where Difona is located. Difona is the only foreign defendant in this action. Defendants Michael and Jaimee Bloom, Kingsbridge Corporation, Offshore Solutions, Inc., Sinotech Corporation, and Bullivant Houser Bailey PC are located in the United States. This factor is a toss up, for it would also be reasonable to require plaintiffs to proceed against defendant in Germany.

*Sixth*, plaintiffs contend that Germany is not an alternative forum for the adjudication of the entire action. Plaintiffs allege that defendants were involved in a fraudulent scheme, involving Difona as well as domestic defendants Michael and Jaimee Bloom, Sinotech, and Offshore Solutions. It is unlikely that a German court would have jurisdiction over the domestic defendants, against whom plaintiffs have alleged similar facts. Additionally, plaintiffs have federal and state securities law claims against certain defendants that they could not bring in a German court. Plaintiffs have sufficiently established that an alternative forum is not reasonably available to adjudicate the entire controversy.

*Seventh*, plaintiffs' choice of forum weighs in favor of the reasonableness of personal jurisdiction here, although "the plaintiff's convenience is not of paramount importance." *Dole Food*, 303 F.3d at 1116.

9

Weighing these factors together, this order finds that the exercise of personal jurisdiction over Difona in this action is reasonable, although barely so. Again, this conclusion is based on allegations that may fall short at trial and/or on summary judgment.

### 3. SERVICE UNDER THE HAGUE CONVENTION.

The Hague Convention governs service of summons on defendants in foreign countries that are signatories to the treaty. Germany is a signatory to the Hague Convention. Difona argues, and plaintiffs do not dispute, that plaintiffs must serve Difona under the Hague Convention (Dkt. No. 40 at 19)

Plaintiffs state that a translation of the first amended complaint was delivered to the German government on September 27, 2012, for service through the Hague Convention (Opp. at 13). Difona maintains, and plaintiffs do not contest, that Difona has not yet been served. Because plaintiffs have not completed proper service on Difona — likely due to delays associated with the Hague Convention procedures — Difona's motion to dismiss is **GRANTED**. If, however, Difona is properly served with the first amended complaint, it must appear in this action or risk default judgment being entered against it.

Plaintiffs originally filed this action on February 15, 2012. Normally, a plaintiff has 120 days to complete service on all defendants. Because of the additional time necessary for service via the Hague Convention, the Court would normally extend this period once. Due to inexcusable delay on the part of plaintiffs, no effort was made to use the Hague Convention procedures until plaintiffs conceded in their filing on July 25, 2012, that they would begin the process of service under the Hague Convention (Dkt. No. 52). In light of this delay, the Court will impose a **DEADLINE OF FEBRUARY 17, 2013**, to complete service. This is the absolute deadline for completing service on Difona under the Hague Convention. As plaintiffs state they provided a translated copy of the first amended complaint to the German government two months ago, this should provide ample time.

Difona contends that, because plaintiffs subsequently filed a second amended complaint, plaintiffs must now translate the second amended complaint and begin the process of Hague Convention service anew. Difona provides no authority to support this contention. Once the

10

summons and first amended complaint have been translated and served via the Hague Convention, and counsel for Difona appear in this action, plaintiffs may serve the second amended complaint on counsel, as it may do with other subsequent filings.

## CONCLUSION

For the forgoing reasons, defendant's motion to dismiss for lack of personal jurisdiction is **DENIED**. Defendant's motion to dismiss for insufficient service is **GRANTED**. Plaintiffs must complete proper service on defendant by **FEBRUARY 17, 2013**. Defendant should be aware that it must appear if it is timely served via the Hague Convention procedures or risk default judgment. The hearing scheduled for November 29 is hereby **VACATED**.

**IT IS SO ORDERED.**

Dated: November 27, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE