1

2

3

4

5 IN THE UNITED STATES DISTRICT COURT

6

7 FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9 VERN WRIGHT, JUNE WRIGHT, and      No. C 12-00746 WHA
SUPERANTENNA CORPORATION,

10

11            Plaintiffs,

                                      **ORDER RE MOTION FOR**
12    v.                                           **DEFAULT JUDGMENT**
                                         **AGAINST DIFONA**
13 MICHAEL BLOOM, JAIMEE BLOOM,            **COMMUNICATION GMBH**
KINGSBRIDGE CORPORATION, OFFSHORE
14 SOLUTIONS, INC., SINOTECH
CORPORATION, DIFONA COMMUNICATION
15 GMBH, BULLIVANT HOUSER BAILEY PC,
and DOES 1–10,

16

17            Defendants.
                                         /

18 MICHAEL BLOOM, JAIMEE BLOOM, and
KINGSBRIDGE CORPORATION,

19

20            Third-Party Plaintiffs,

21    v.

22 JESSICA STEPHENS and BONNIE CRYSTAL,

23            Third-Party Defendants.
                                         /

24 **INTRODUCTION**

25       Plaintiffs filed a motion for default judgment against the sole remaining defendant in this

26 action. To the extent stated below, plaintiffs' motion for default judgment is **GRANTED AND IS**

27 **OTHERWISE DENIED**.

28

United States District Court

For the Northern District of California

**STATEMENT**

The background of this action has been set forth in previous orders and need not be repeated in detail herein (Dkt. Nos. 77, 95, 126, and 131).  Briefly, this action is a dispute between two amateur radio operators and the collapse of their small business of making and selling ham radio antennas.  The following facts are taken from the second amended complaint, filed in October 2012.

Plaintiffs Vern and June Wright started Super Antennas, a small business selling antennas to the amateur ham radio market.  The Wrights later established SuperAntenna Corporation, a California corporation headquartered in San Mateo.  This order refers to plaintiffs' companies and products generally as "Super Antenna."

Defendant Difona Communications GmbH is a ham radio equipment distributor located in Germany.  Difona had an ongoing business relationship with plaintiffs over several years for the purchase and distribution of Super Antenna products in Germany (Second Amd. Compl. ¶¶ 208–209).  Difona was the exclusive distributor for Super Antenna products in Germany during 2009 and 2010 (*id*. at ¶ 203).  Plaintiffs had an agreement with Difona "to become a worldwide dealer and distributor for Super Antenna" (*id*. at ¶ 206).  Beginning in January 2012, Difona sold pirated Super Antenna products in Europe by directly contacting Super Antenna's customers and through retail sales from Difona's website.  Difona owner Alfred Kräemer approached Super Antenna dealers in Europe, falsely stating that Super Antenna was out of business and offering to sell "genuine Super Antenna products manufactured by the same factory to the same specifications" (*id*. at ¶ 212).  The complaint alleges that "by distributing and selling these illegal copies of the Super Antenna products," Difona stole the "trade secret designs, business plans, and confidential information of Plaintiffs" (*id*. at ¶ 223).

Through counsel, Difona filed a motion to dismiss plaintiffs' first complaint, following which plaintiffs filed a second amended complaint.  The second amended complaint includes claims against Difona for (1) intentional or negligent misrepresentation or fraud, and unjust enrichment and (2) misappropriation of trade secrets.  Difona then filed a new motion to dismiss the second amended complaint based on lack of personal jurisdiction and defective service of

United States District Court

For the Northern District of California

1   process.  The motion to dismiss for lack of personal jurisdiction was denied, but was granted as

2   to the lack of service.  Plaintiffs later completed service of process to Difona via the Hague

3   Convention procedures (Cohen Decl. ¶ 8).  Difona filed an answer to the second amended

4   complaint on January 25, 2013 (Dkt. No. 106).

5          A mandatory settlement conference was set before Magistrate Judge Paul Grewal on

6   April 26, 2013.  Neither Difona nor its counsel appeared at the settlement conference.  Following

7   the conference, the action was settled as to all claims except as to plaintiffs' claims against

8   Difona.  Counsel for Difona then filed a motion to withdraw as counsel.  By order dated May 23,

9   counsel's motion to withdraw was denied, and plaintiffs and Difona were referred to Judge

10  Grewal for a further settlement conference (Dkt. No. 120).  Judge Grewal set a date for the

11  settlement conference, but Difona did not attend (Dkt. No. 126).  Counsel for Difona filed

12  detailed declarations regarding their efforts to inform Difona of its obligation to appear at the

13  settlement conference (Dkt. Nos. 128 and 128-1).

14         By order dated June 11, this Court found that counsel's efforts to provide notice to

15  Difona regarding the mandatory settlement conference were adequate but that Difona appeared

16  "to be shirking its obligations to litigate this action (despite having appeared and answered the

17  complaint several months ago) and is now preventing a complete resolution of the case" (Dkt.

18  No. 131).  Due to Difona's failure to obey Court orders and to cooperate with its counsel to

19  defend itself or otherwise resolve this action, the motion to withdraw as counsel for Difona was

20  granted.  Counsel were ordered to give notice to Difona of the order allowing existing counsel to

21  withdraw and to have new counsel appear for Difona.  Counsel were further ordered to "inform

22  Difona that failure to do so will likely result in default being entered against Difona, which will

23  in turn likely result in a monetary judgment being entered against it.  Such a judgment, if not

24  paid, would interfere with Difona's ability to do business in the United States, among other

25  things" (*ibid.*).  Lastly, the order provided that plaintiffs could file a motion for default judgment

26  against Difona if it had not appeared in this action through new counsel by July 8.  Counsel for

27  Difona filed a declaration of Attorney Andrea Anapolsky stating that Difona had been notified of

28

3

1   the Court's order granting the motion to withdraw and requiring Difona to appear through new

2   counsel by July 8 (Anapolsky Decl.).

3      Difona has not made any filings since the entry of that order.  Plaintiffs have now filed a

4   motion for default judgment against Difona.  No opposition has been received.  Accordingly, to

5   the extent stated below, the motion for default judgment is **GRANTED**.

**ANALYSIS**

6

7   **1.    DEFAULT JUDGMENT.**

8      Courts have inherent equitable powers to dismiss actions or enter default judgments for

9   failure to prosecute, contempt of court, or abusive litigation practices.  *TeleVideo Sys., Inc. v.*

10  *Heidenthal*, 826 F.2d 915, 916 (9th Cir. 1987) (citations omitted).  A court must consider: "(1)

11  the existence of extraordinary circumstances and the presence of wilfulness, bad faith, or fault by

12  the offending party; (2) the efficacy of lesser sanctions; and (3) the relationship or nexus

13  between the misconduct and the matters in controversy."  *Estrada v. Speno & Cohen*, 244 F.3d

14  1050, 1058 (9th Cir. 2001).  "In addition, as optional considerations, the court may also assess

15  the prejudice to the party-victim of the misconduct and the government interests at stake."  *Ibid.*

16         **A.    Extraordinary circumstances.**

17     Difona failed to appear for two mandatory settlement conferences set by Magistrate

18  Judge Grewal.  Difona, though located in Germany, had retained local counsel to defend itself in

19  this action.  Counsel (the law firms of Seyfarth Shaw LLP and LaDue Curran & Kuehn LLC)

20  filed two motions to dismiss on Difona's behalf, as well as an answer.  Counsel informed the

21  Court that Difona has not paid any of its legal fees for their services.  Several months after

22  counsel first notified Difona that they would seek to withdraw as counsel if the fees were not

23  paid, Difona sent an email to counsel requesting to "end [the] collaboration" (LaDue Decl. ¶ 9).

24     At the April 26 mandatory settlement conference before Magistrate Judge Grewal, all

25  parties except Difona attended.  The case was settled completely except for plaintiffs' claims

26  against Difona.  Both Difona and its counsel were order to attend a second mandatory settlement

27  conference before Judge Grewal.  Counsel attended the conference, held on May 29, but Difona

28  did not.  Following the conference, Judge Grewal ordered counsel for Difona to file a declaration

United States District Court

For the Northern District of California

describing the events leading up to the conference and any justification or excuse Difona had

provided for its actions.  Judge Grewal's order stated (Dkt. No. 126):

> This is not the first time Difona has violated this court's order to
> appear at a settlement  conference.  On April 26, 2013, the court
> convened a settlement conference in this case, but as it did today,
> Difona elected to violate the court's order to send a representative.
> Difona's refusal to follow court orders has consumed valuable
> court time and resources that would have otherwise been directed
> to others seeking relief from this institution.  Equally important,
> Difona has disrespected the time and resources of the other parties
> in this case who complied with their obligation to appear.

Counsel filed declarations describing the notice and information they provided to Difona

of the Court's order requiring its appearance at the May 29 settlement conference (Dkt. No. 128).

Five days before the conference, counsel (specifically Attorney John LaDue) advised Mr.

Kräemer of Difona that his failure to personally appear at the settlement conference would likely

result in sanctions from the Court and requested authority to negotiate a settlement if Mr.

Kräemer would not appear (LaDue Decl. ¶ 9).  On the day of the settlement conference, Mr.

Kräemer emailed counsel, stating that he could not attend the conference because Difona is a

small company and cannot afford to shut down its business and travel from Germany to

California.  Mr. Kräemer did not give counsel any authority to negotiate a settlement with

plaintiffs (*id.* at ¶ 12).

By order dated June 11, this Court found that Difona appeared to be shirking its

obligations to litigate this action and was preventing a complete resolution of the case (Dkt. No.

131).  Counsel were ordered to and did inform Difona that failure to appear through new counsel

by July 8 would likely result in a default judgment being entered against it (*ibid.*; Anapolsky

Decl.).

No new counsel have appeared for Difona in this action.  Plaintiffs filed a motion for

default judgment and provided notice of the motion to Difona.  No opposition was received.

Difona did not appear at the hearing on the motion for default judgment.

Difona has repeatedly ignored Court orders, wasting the resources of the Court and the

other parties.  It appears that Difona does not intend to further litigate or defend itself in this

action, as it failed to appear by the Court-ordered deadline, did not respond to the motion for

United States District Court

For the Northern District of California

1  default judgment, and did not appear at the hearing on the motion.  These circumstances are

2  extraordinary and demonstrate intentional and wilful conduct on the part of Difona.

3  **B.      Efficacy of Lesser Sanctions.**

4  Our court of appeals has recognized that in some cases, "a judge's warning to a party that

5  a future failure to obey a court order will result in default judgment can itself suffice to meet the

6  'consideration of alternatives' requirement."  *Malone v. U.S. Postal Serv*., 833 F.2d 128, 132

7  (9th Cir. 1987).  This order finds that the present action is such a case, where the circumstances

8  establish that Difona, having been very clearly warned that it must appear through counsel and

9  actively defend this action or face default, has wilfully flouted Court orders and does not intend

10 to defend against plaintiffs' claims.  Moreover, Difona is a small company located in Germany

11 and does not appear to have personnel or assets in this country.  Thus, imposing sanctions or

12 levying penalties would not be effective.

13 **C.      Nexus between Difona's Misconduct and the Matters in Controversy.**

14 Generally, a court "cannot order default against a party as a sanction of misconduct that

15 is unrelated to the merits."  *Estrada v. Speno & Cohen*, 244 F.3d 1050, 1058 (9th Cir. 2001)

16 (citing *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349–50 (1909)).  Here, Difona's

17 demonstrated unwillingness to defend itself in this action is clearly connected to the merits of the

18 case.

19 Accordingly, this order hereby **STRIKES** Difona's answer and **ENTERS DEFAULT**

20 **JUDGMENT** against Difona.

21 **2.      DAMAGES.**

22 Once default is entered, the well-pleaded factual allegations in the complaint are taken as

23 true, except for those relating to the amount of damages.  *Heidenthal*, 826 F.2d at 917–18.

24 "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are

25 not established by default."  *Cripps v. Life Ins. Co. of N. Am*., 980 F.2d 1261, 1267 (9th Cir.

26 1992); *see also DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).  A court has

27 "wide latitude" and discretion in determining the amount of damages to award upon default

28 judgment.  *James v. Frame*, 6 F.3d 307, 310 (9th Cir. 1993).  The plaintiff must provide

United States District Court

For the Northern District of California

1    evidence of its damages, and the damages "must not differ in kind, form, or exceed in amount,

2    what is demanded in the pleadings."  Rule 54(c).

3        Plaintiffs' motion for default judgment seeks $223,000 for unauthorized sales of the

4    Difona HF-P1 antenna and $47,800 for unauthorized sales of the Super Antenna YP-3 antenna.

5    Plaintiffs also seek attorney's fees for willful and malicious misappropriation of trade secrets and

6    injunctive relief.  The gravaman of plaintiffs' claims against Difona is that Difona sold

7    unauthorized or pirated copies of plaintiffs' products and misappropriated plaintiffs' trade

8    secrets.  From 2009 through 2011, Difona was plaintiffs' exclusive distributor and dealer for

9    Super Antenna products in Germany and central Europe (Compl. ¶ 203; Wright Decl. ¶ 3).  The

10   complaint alleges that since January 2012, Difona has sold illegal copies of Super Antenna

11   products and misappropriated plaintiffs' trade secret designs, business plans, and confidential

12   information (Compl. at ¶ 223).

13       In support of their motion for default judgment and damages, plaintiffs submit the

14   declarations of plaintiff Vern Wright and third-party defendant Bonnie Crystal.  Ms. Crystal is an

15   electronics and RF engineer and amateur radio operator.  She states that is currently the president

16   and Chief Technology Officer of a company that designs and produces HF antennas and is the

17   founder and executive director of Hfpack, "the largest ham radio organization devoted to

18   amateur HF portable operation" (Crystal Decl. ¶¶ 1–2).  Ms. Crystal compared the Difona HF-P1

19   antenna to the Super Antenna MP-1 antenna and determined that the two antennas are very

20   similar.  She states that the Difona HF-P1 was most likely manufactured by the same company

21   that had manufactured the older Super Antenna MP-1 products (*id.* at ¶ 4, 15).  Plaintiff Wright

22   also states that the HF-P1 "is an exact copy" of his MP-1 antenna (Wright Decl. ¶ 7).  This order

23   finds that the evidence submitted is sufficient to establish for purposes of this order that the

24   Difona HF-P1 antenna is similar or substantially similar to the Super Antenna MP-1 antenna.

25       As to damages, however, plaintiffs have not established a sufficient basis of proof for

26   their claim that, since January 2012, Difona sold an estimated 200 units of the Super Antenna

27   YP-3 antenna and 2000 units of the "pirated MP-1 Antennas," for a total profit of $270,800.  The

28   only evidence submitted on this topic is the declaration of plaintiff Wright.  He states that he has

United States District Court

For the Northern District of California

1    been in the antenna manufacturing and sales business since December 1999 (*id.* at ¶ 2).  Plaintiff

2    Wright states that "for approximately [two-and-a-half] years from 2009 to mid-2011, Difona

3    ordered approximately $100,000 in products from plaintiffs" (*id.* at ¶ 4; *see also* Compl. ¶ 209).

4    He opines that, "based on [his] knowledge of the market, the sales history between Super

5    Antenna and Difona and the other European distributors that have placed orders with Difona

6    instead of Super Antenna," that Difona sold at least 2,000 HF-P1 antennas from January 2012 to

7    the present ((Wright Decl. ¶ 8).  Similarly, he estimates that Difona has sold at least 200 of the

8    YP-3 antennas.  Plaintiff Wright, however, has not been qualified as an expert in this matter.  He

9    does not submit any evidence in support of his estimates for the number of units of each product

10    sold.  In fact, the figures he estimates for Difona's profits for the 18-month period between

11    January 2012 and the date of his declaration vastly exceed the amount of products Difona

12    ordered from Super Antenna for the entire 30-month period between 2009 through mid-2011,

13    when Difona was the exclusive distributor for Super Antenna in Germany and central Europe (*id.*

14    at ¶ 4).  Accordingly, this order finds that the empirical evidence of Difona's historical purchases

15    from Super Antenna is a more reliable basis for estimating sales.  For the 18-month period at

16    issue here, Super Antenna's estimated lost sales, based on past sales history, is $60,000.

17          Although plaintiffs have not provided a specific break-down of the units of each product

18    Difona ordered from Super Antenna, or Super Antenna's profit therefrom, it can be inferred that

19    the $100,000 is a wholesale price.  Super Antenna's profits on the sales would, at a minimum,

20    subtract the cost of purchasing the product from the manufacturer.  Here, Super Antenna has not

21    provided an express break-down of the cost for each type of unit.  Based on the figures provided

22    regarding the prices paid to the manufacturer for each product, this order will conservatively

23    estimate that the cost to purchase a manufactured product was at least 25% of the sale price.

24    Accordingly, a fair estimate of plaintiffs' lost profits, based on historical sales figures, would be

25    75% of $60,000, or **$45,000**.

26          **3.    OFFSET FROM SETTLEMENT WITH OTHER DEFENDANTS.**

27          California Code of Civil Procedure Section 877 provides that, where a plaintiff has

28    entered into a good faith settlement with some defendants, the "plaintiff's claims against the

other defendants are to be reduced by the amount of consideration paid for the settlement."

*Erreca's v. Superior Court*, 19 Cal. App. 4th 1475, 1488 (1993) (internal quotations omitted).

"The nonsettling defendants obtain in return a reduction in their ultimate liability to the

plaintiff. *Ibid*. (citing *Abbott Ford, Inc. v. Superior Court*, 43 Cal. 3d 858, 871–72 (1987)).

Such an offset applies where a release is given in good faith "to one or more of a number of

tortfeasors claimed to be liable for the *same tort*." Cal. Code Civ. Proc. 877 (emphasis added).

Plaintiffs' original motion did not address the issue of offset at all, although the Court is

aware that a settlement has been reached with all other defendants. Following the Court's

request for supplemental briefing, plaintiffs have provided information regarding the settlement

agreement reached with defendants Michael and Jamie Bloom, Kingsbridge Corporation,

Offshore Solutions, Inc., and Sinotech Corporation (the "Bloom defendants") and with defendant

law firm Bullivant Houser Bailey PC. Plaintiffs have now filed a declaration from counsel,

Attorney Garry Cohen, as well as plaintiffs' settlement conference statements, prepared for the

settlement conferences held before Magistrate Judge Grewal.

Plaintiffs state that the law firm defendant Bullivant paid $15,000 to settle the claims

against it, which relate to the alleged securities law violations. These claims are separate and

distinct from plaintiffs' claims against Difona, which relate to fraud and trade secret

misappropriation through overseas sales of pirated products. The Bloom defendants paid

$225,000 to settle plaintiffs' claims against them. As set forth in plaintiffs' settlement statement,

the claims against the Bloom defendants on which the settlement was based relate to the

takeover of plaintiffs' company through an allegedly fraudulent securities transaction,

defendants' siphoning off of funds and inventory from plaintiffs, and the sales plaintiffs lost due

to the disruptions to their business. Plaintiffs' settlement statement also contends that Difona

stole the designs for their products and had them manufactured at a Chinese factory controlled

by the Bloom defendants (Dkt. No. 143 at 11). The statement itemizes separate damage amounts

for the Bloom defendants and Difona. As to Difona, plaintiffs state that they are entitled to

$224,000 in damages (but would be willing to settle for $100,000 in addition to a permanent

injunction and assurances of no future sales of pirated products) (*id*. at 18–19).

United States District Court

For the Northern District of California

9

United States District Court

For the Northern District of California

1   Plaintiffs have also submitted the declaration of Attorney Cohen, who states that the

2   allegations from the second amended complaint  "linking Difona [] with Michael Bloom were

3   not used nor discussed in reaching settlement with the Bloom Defendants" (Cohen Decl. ¶ 5).

4   Additionally, according to Attorney Cohen, plaintiffs did not argue at the settlement conference

5   that the Bloom defendants should be liable for Difona's illegal sales.  This order finds that

6   Difona is not entitled to an offset under Section 877 for the settlement reached by the Bloom

7   defendants.  Plaintiffs' claims against Difona for fraud and misappropriation of trade secrets

8   through sales of pirated products in Europe are separate and distinct from the claims settled and

9   released against the Bloom defendants.

10   **4.      ATTORNEY'S FEES.**

11   Under California Civil Code Section 3426.4, a plaintiff may recover reasonable

12   attorney's fees and costs for willful and malicious misappropriation.  The complaint alleges that

13   Difona's misappropriation was willful and malicious and includes facts (here assumed true) that

14   would provide a sufficient basis for such a finding (Compl. ¶ 265).  Plaintiffs' counsel, Attorney

15   Garry Cohen, has filed a declaration stating that his actual time spent on this action specifically

16   dealing with Difona was over 70 hours, at a billing rate of $440 per hour.  Attorney Cohen has

17   reduced his fee request and seeks $25,000.  Accordingly, pursuant to Section 3426.4, an award

18   of **$25,000 IN FEES** is appropriate.  Plaintiffs have not submitted any information regarding any

19   costs actually and reasonably incurred, so none will be awarded.

20   **4.      INJUNCTIVE RELIEF.**

21   Plaintiffs further seek to permanently enjoin Difona from selling pirated Super Antenna

22   products or misrepresenting to others that it is affiliated with Super Antenna or the Wrights.

23   This order **HEREBY ENJOINS** Difona from holding itself out as in any way affiliated with

24   SuperAntenna Corporation, Vern Wright, or June Wright and is further enjoined from selling,

25   distributing, or promoting any antennas or accessories under the name of Super Antenna,

26   SuperAntenna, or "MP-1."

27   **CONCLUSION**

28   To the extent stated above, plaintiffs' motion for default judgment against Difona is

**GRANTED**.  Default judgment in the total amount of **$70,000** and a permanent injunction will be entered against Difona.  This amount includes the attorney's fees awarded herein.

      The Clerk shall close the file.

      **IT IS SO ORDERED.**

Dated:  August 22, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

United States District Court

For the Northern District of California

11